KUHN, J.
 

 12Claimant-appellant, Cynthia McIntyre, appeals the judgment of the Louisiana Office of Workers’ Compensation Administration (OWC) in favor of her former employer, defendant-appellee, Rouse’s Enterprise, L.L.C. (Rouse’s), dismissing her claims for designation of a physician of her choice, medical benefits, and indemnity benefits. We affirm.
 

 McIntyre avers that OWC erred in: (1) determining that Dr. Paul van Deventer was her choice of physician; (2) failing to conclude that she remains disabled as a result of the December 29, 2004 accident; and (3) finding that Rouse’s made a bona fide effort to return her to work.
 
 [1]
 

 OWC determined that it was the hospital where McIntyre received emergency treatment after her fall that provided her with a list of three physicians, from which she selected the name of Dr. van Deventer, an orthopedist, for follow up treatment. This finding is duly supported by the evidence, including McIntyre’s testimony. OWC’s factual findings, duly supported by the evidence, are not manifestly erroneous.
 
 See Edwards v. Sawyer Indus. Plastics, Inc.,
 
 99-2676, p. 9 (La.6/30/00), 765 So.2d 328, 332.
 

 McIntyre treated with Dr. van Deventer from January 2005 until August 2005. Although she testified that she was receiving medical treatment from Dr. Rosalind Cropper, McIntyre provided no evidence to support that claim and admitted that she never submitted a request to Rouse’s for payment of any medical treatment rendered by Dr. Cropper. McIntyre saw no other health care providers |3until April 2006 when, by agreement of the parties, she returned to Dr. van Deventer, who released her to sedentary duty opining she had reached maximum medical improvement for her back and right knee. It was not until May 18, 2007, that McIntyre requested treatment from another orthopedist, Dr. John Logan. Because McIntyre was treated by Dr. van Deven-ter, who was also an orthopedist and to whom she was not specifically directed to by Rouse’s, OWC correctly concluded that he is regarded as her choice of treating physician.
 
 See
 
 La. R.S. 23:1121 B(2)(a).
 

 In addition to releasing McIntyre to sedentary work duty on April 20, 2006, Dr. van Deventer’s deposition testimony revealed that McIntyre complained of lower back pain during her first two visits.
 
 [2]
 
 Af
 
 *999
 
 ter reviewing MRI studies undertaken on McIntyre’s back on January 17, 2005, Dr. van Deventer noted findings of some disc degeneration and arthritis in the facet joints, mostly at L4-5 and L5-S1 levels, and did not see any evidence of acute pathology, expressly ruling out any disc herniation or acute compression of the spinal cord or nerves. Based on his physical exam and the MRI studies, he opined that she had a lumbar strain. Dr. van Deven-ter’s notes revealed that while she returned to see him in May, June, and August 2005, she voiced no complaints of back pain.
 

 McIntyre sought medical treatment from Dr. Logan, commencing on May 18, 2007. Dr. Logan’s review of MRI studies conducted on that day showed diminished 14disc space height at L4-5 and L5-S1 levels with facet arthropathy at L3-A, L4-5, and L5-S1 level. Based on the history related to him by the patient, Dr. Logan concluded that the condition of McIntyre’s back was reasonably, medically related to the December 29, 2004 fall. But Dr. Logan admitted the May 2007 MRI study showed findings that were “reasonably in the same ballpark” as those of the January 2005 study. Moreover, he testified that it was reasonable to suggest that, in light of the MRI findings and McIntyre’s arthritic condition, the aggravation of the preexisting condition of her back as a result of the December 29, 2004 accident had resolved itself by May 2005, when Dr. van Deven-ter’s notes do not indicate any express complaints of back pain upon his examinations of McIntyre. Thus, a reasonable factual basis exists to support OWC’s conclusion that the complaints of low back pain had resolved by May 2005, and that Dr. Logan’s treatment of McIntyre for low back pain in May 2007 was not related to the December 29, 2004 accident.
 
 See Ed-iva/rds,
 
 99-2676 at p. 9, 765 So.2d at 332.
 

 McIntyre maintains that OWC erred in finding that Rouse’s made a bona fide effort to return her to work, suggesting that while the employer claimed that sedentary employment was offered to her, the evidence establishes that management actually sent her home when she tried to return to work the first time Dr. van De-venter stated she could perform sedentary job duties. While McIntyre’s uncontro-verted testimony was that she appeared for work on crutches and was sent home, she indicated that was in 2005. The record establishes that during this time, Rouse’s continuously paid her medical and indemnity benefits. After Dr. van Deven-ter released her to sedentary job duties in April 2006 and Rouse’s indicated it had a job for her within those medical restrictions, McIntyre admitted that she never | r,contacted Rouse’s to inquire about when she should report to the store to work. Accordingly, there was no manifest error by OWC in finding that before it discontinued payment of benefits, Rouse’s made a bona fide offer to return McIntyre to work within her restrictions and she refused it.
 

 For these reasons, we affirm the OWC judgment, dismissing McIntyre’s claims, in this memorandum opinion issued in compliance with La. URCA Rule 2-16.1B. Appeal costs are assessed against claimant-appellant, Cynthia McIntyre.
 

 AFFIRMED.
 

 [1]
 

 . Although McIntyre lists numerous assignments of error, only three have been briefed, and consequently the others are considered abandoned.
 
 See
 
 La. URCA Rule 2-12.4.
 

 [2]
 

 . The release to sedentary work duty by McIntyre’s treating physician supports OWC's finding that her right knee did not give rise to a disability due to a work-related injury on May 18, 2007. when she sought additional medical treatment from Dr. Logan, who deferred his medical assessment of her knee to Dr. van Deventer. Moreover, at the commencement of the hearing. McIntyre’s counsel conceded that the aneurysm from which she suffered and that precluded Dr. van De-venter’s treatment of her knee until evaluated
 
 *999
 
 by a vascular surgeon was not a preexisting condition that had been aggravated by the accident.